## Postal Telegraph Cable Co. v. Patton.

(Decided March 28, 1913.)

### Appeal from Boyd Circuit Court.

1. Telephone Companies—Action by to Condemn Right of Way.— In an action by a telephone company to condemn a right of way over a tract of land, it should set out how much land it will take and use for the construction of its line, and how much for ingress and egress in its maintenance.

2. Telephone Companies—Action by to Condemn Right of Way.— Damages.—In such an action the defendant may recover the actual cash value of the land taken, and such damages as will accrue to the remainder of his land by reason of the taking of the strip and the construction of the telephone line as set out in the petition.

3. Telephone Companies—Action to Condemn Right of Way—Examination of Witnesses on Trial.—On a trial of the case the interrogation of witnesses should be limited to the matters indicated.

GEORGE B. MARTIN for appellant.

MONTAGUE & WILLIAMS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

The Postal Telegraph Cable Company brought this suit in the Boyd County Court against John G. Patton and

wife, to condemn a right of way through a tract of land. On a trial of the case the jury fixed the damages at $800. The court entered judgment on the verdict, and the plaintiff appeals.

The plaintiff is engaged in the telephone and telegraph business and in the transmission of telephone and telegraphic messages for the public for hire. By section 4679-b, Ky. St., any telephone company is authorized to construct and operate its telephone lines across the land of any person; and if it cannot obtain the right of way by contract, it may institute condemnation proceedings to obtain the desired right of way as provided in section 4679-a Ky. St. Under subsection 4 of section 4679-a, the jury are required in a case like this to take the following oath:

"I do solemnly swear that as a member of this jury I will a true verdict render in this cause, assessing for the defendant the actual cash value of so much of his land as may be shown by the proof will be actually taken and occupied by the petitioner, and such other incidental damages, if any, as shown by the proof will accrue to the remainder of his land by reason of the construction of petitioner's telephone line in the manner set out in the petition."

Subsection 5 is in these words:

"That the court shall admit any relevant testimony either party may offer to prove the cash market value of the land that will be taken and occupied by the petitioner, and all actual damages that will accrue to the defendant in the diminution of the value of the remainder of its right of way for railroad or turnpike purposes, as the case may be, by reason of the construction of the telegraph line upon such right of way in the manner set out in the petition, and in considering incidental damages to the defendant, they may take into consideration any advantages that may accrue to the defendant as shown by the proof, by reason of the construction of such telegraph line."

Under this section when a right of way is condemned across a tract of land owned by the defendant, the court must admit any relevant testimony either party may offer to prove the cash market value of the land that will be taken and occupied by the petitioner, and all actual damages that will accrue to the defendant by the diminution in value of the remainder of his land, by reason of

the construction of the telephone line in the manner set out in the petition. In this case there was no proof of any advantages that would accrue to defendants from the construction of the line.

The court in the examination of the witnesses did not confine them to the questions indicated in the statute. In cases of this character, the interrogation of the witnesses should be practically conducted along the same lines as in the condemnation of land for railroad or other purposes. The proper mode of interrogation is indicated in Big Sandy Railway Co. v. Dils, 120, Ky., 572, and on another trial, the course of interrogation there indicated will be followed as far as applicable.

The trouble with the whole trial seems to come out of the plaintiff's petition. By the petition it sought to condemn so much of the land as may be necessary for constructing, maintaining and operating its lines, together with the necessary poles, arms, insulators and other fixtures, it being alleged that it proposed to construct its lines by the placing of the poles about 18 inches in diameter, about .... feet in the ground and extending about thirty feet in height above the ground; that near the top of the poles, it proposed to construct arms, eight feet in width, extending equally upon each side of the poles, with a space of eighteen inches beyond each end of the arm for trimming trees or removing obstructions; that it proposed to place twenty poles on the defendant's land 150 feet apart along a line indicated in the petition, which was to be the center line for setting the poles. The petition did not disclose what part of the land would be needed for ingress and egress, and on the trial it was assumed by the defendant's witnesses that the plaintiff would have a right to go over any part of the tract of land at any time it found this to be necessary in the construction or maintenance of its line. The plaintiff should have set out in his petition, in addition to the facts stated, how much land was to be used in the construction, maintenance and repair of its line, and for ingress and egress to examine, repair and maintain the line. (Calor Oil & Gas Co. v. Withers, 141 Ky., 489.) It is manifest that if a strip only eleven feet wide was taken, this would not be sufficient for ingress and egress in constructing and maintaining the line, and in cases of this character, what is taken should be defined, that both parties may know

their rights, and the jury may intelligently assess the damages.

In view of the condition of the record we conclude that each party should pay his own cost on this appeal.

Judgment reversed and cause remanded for further proceedings consistent herewith. The plaintiff will have leave to amend his petition on the return of the case to the county court.